Good morning and welcome to the Ninth Circuit. We'll take the cases in the order on the day sheet. The first case is United States v. Douglas Taylor. Thank you, Your Honor. Good morning and may it please the Court. My name is Caroline Platt from the Office of the Federal Public Defender. On behalf of Appellant Douglas Taylor, we respectfully ask the Court to vacate the 60-month upward variance revocation sentence that Judge Anderson imposed in this case. Unless the Court directs otherwise, I'll start with the procedural errors that we allege to have taken place at the revocation sentencing hearing. As a more general matter, the District Court failed to properly or sufficiently explain its reasoning in the explanation requirement as set forth in cases such as Rita Gall and this Court's decision in Carty from 2009, sorry, 2008. So it has a whole paragraph, right? So yes, the entire explanation of sentence, Your Honor, is less than one transcript page covering parts of 12 and 13 of the ER. So the government argues it goes through the paragraph and attaches each of the statements to a different portion, 3553A. So why isn't that enough? It wasn't just a sentence like in MGTAAB, it was a whole paragraph. So I mean, Your Honor, if I may, undisputably under Supreme Court precedent and this Court's precedent, the degree of the variance has an effect on the degree of explanation required. This was a double to triple of the range sentence. It was 60 months when the range was 18 to 24. And so if you look, and I'm looking at the same list as you are, and I'm happy to address them, but if you look at cases such as McBell, Simtobe, Hammons, I don't know how to pronounce it, but Wachneen, and Trujillo, which is a 3582 case, but the rest of them are SRV sentencing cases, they all require more, and particularly those cases such as McBell and Simtobe that involved upward variances. That's a requirement. But McBell was just a sentence. I mean, there was nothing in McTobe, basically. That's correct, Your Honor, but that was also only a three-month variance from nine months to 12 months, whereas Simtobe got a statutory maximum 36-month sentence. What we have here is a statutory maximum on two counts run consecutively, which is not a statutory maximum error, but it's an extreme degree of variance. And so looking to... A plain error. A plain error review. That's correct, Your Honor. And so if you look at this Court's decisions in Wachneen and in Hammons, specifically, it discusses the meeting of the third and fourth prongs of plain error, which, as we noted, are also changed in the defense's favor, usually by Molina-Martinez and Rosales-Morales. Neither case the government responded to in its red brief, although I raised them in the blue brief. And so if I could go back to your original question, Judge Acuda, and the six sort of things that the government pulled out from the District Court's explanation, they're also largely very generic. So I'm not saying they have no reference whatsoever to the facts of Mr. Taylor's case, but if you look at history of noncompliance and then saying that it's repeated violations, Mr. Taylor violated supervised release once on August 14th of 2008, which I also will note is 17 years ago, because of the 21-year sentence he served in the California State System. So the government suggests that's the only one which is wrong, and it was sort of a slip of the tongue is what the government says. So the government makes that assertion based on an alleged violation from one week before the 14th on August 7th, which was a something kind of alcohol parking lot situation, that the government explicitly withdrew the charges at page 34 of the ER. I submit that the government cannot now rely on that as a violation, having withdrawn them. That's a waiver. The next factor is deterrence. That is generic. It applies in every case, particularly supervised release, where someone has a conviction as well as a violation. Has not responded favorably to sanctions or interventions. That is either out of date or patently false. He had not responded well in 2008, but now today in 2025 or 2024 at the time of sentencing, Mr. Taylor is in treatment. He is sober. He is out of the gang. He's living in the sensitive needs yard or now in the SHU because of his own successful rehabilitation in the California State Prison System. So that was both outdated and then clearly erroneous. There's the cooperation. The government argues that, the district court said it considered memos and letters in our decision. Cardi said you don't have to mention everything that's in that memo. I'm so glad you raised that, Judge Acuda, because the judge did say that. But Cardi is a within range case. And there are lots of cases from this court that say, just saying I considered the papers, for example, Trujillo, and also I think McBell, say that is not sufficient in a variance case. The court, I think it's McBell, rejected that reasoning at length, and it's also in Trujillo. I'd also like to note, if my mayor and I know my time is dwindling, but a lot of the cases the government cites are within range sentences. That makes them completely an opposite because of the differing explanation requirements in an upward variance case, never mind an extreme upward variance case. So Carter, Cardi, Grant, Mix, Perez-Perez, and Stodaro, I know that was fast, I'm sorry, they're all within range cases. That makes them not particularly on point. Other cases they rely on, such as Leonard, Mix, and Musa, as well as Perez-Perez again, all predate this court's decision in Cardi, which footnote five says, if there's prior cases that are inconsistent with Cardi, Rita, Gall, and Kimbrough, they are overruled explicitly by this court on Bonk. So the government should not rely on them to the extent they say something different than McBell, Simtoe, Wachnine, Hammonds, and Trujillo. So I think if you look carefully at the government citations, they don't really stand up in an extreme variance case in terms of just the basic explanation error. We have also submitted that there was an A2A error, which is the same case as largely because the egregious conduct was, in fact, the focal point of the court's sentencing, which is- Is this the one pending before the Supreme Court in Ostres? That's right, Your Honor. Yes. So should we wait until Ostres is decided? The court has the discretion, obviously, to control its docket. I would say you can rule, if you're going to rule for Mr. Taylor, on the generalized explanation, what I'll call a Cardi error, without waiting for Osteres. I think if you are going to find that there's no explanation error, but there's a procedural error of A2A, you may or may not want to wait for Osteres. That would be up to you. I listened to the argument last night. It was actually, it was really interesting. Nobody predicts, obviously, from any argument. I know it'll come out sometime before the end of June. I mean, presumably, yeah. I don't think this term is one of the weird ones that goes later. And then, Your Honors, and again, I know I'm running out of time, but I would also say, if you decline to either recognize on plain error or find procedural error, we submit, and I don't do this often, I'm a longtime defender, that this sentence is also substantively unreasonable. A 60-month, five-year sentence, when you're not allowed to consider the egregious nature of the conduct and without a sufficient explanation, as you all know, the substantive reasonableness is also judged. What do you mean in the first part about not consider the egregious nature of the conduct? I think that an A2A, what we'll call retribution arguments that are excluded. Oh, you're saying you can't consider. That's right. And I think the fact that he did, excuse me, the court did, goes also to substantive reasonableness because it's an impermissible, currently, factor. And similarly, just all the 35, 53A factors, which the whole list I was going through with Jakuta, those factors and their application to this client are how the court judges substantive reasonableness. And again, five years for revocation, particularly for a client who served 21 years for the same two incidents in the state court, is just plainly, not plainly, substantively unreasonable. He was. Plainly substantively unreasonable. Well, it doesn't have to be plainly, but it's clearly so. How about that? Yeah, so obviously, procedural is plain, substantive is straight-up reasonableness. And your substantively unreasonable argument would also tie in with Asteris, right? In part, but not entirely. It would be not just the retribution A2A factors, but we think on all the bases, particularly in light of the arguments that we submitted below to the district court about his later rehabilitation and treatment and cooperation, A1 factors, the history and characteristics of the offense and the offender, they're not a one-way ratchet. And here, the district court ignored a substantial amount of both mitigating and also rehabilitative evidence that's documented. You know, it's not just we said it, we know better. So I would argue that those also all go to the substantive unreasonableness, as well as the fact that the court didn't explain why it failed to accept those arguments, which is a separate explanation requirement to address non-frivolous defense arguments, what I would say ours were in this case. Do you want to save time? I do want to save time for rebuttal, your honor. Thank you very much. I appreciate it. I hear from the government. Good morning and may it please the court, Rajesh Srinivasan for the United States. A year after being released from prison for committing four robberies, defendant Douglas Taylor committed a fifth one while on supervised release. In addition, he did not comply with his drug and alcohol conditions. Consequently, for this breach of trust, the district court sentenced him to 60 months imprisonment and it justified that sentence based off the defendant's history and characteristics, the need for deterrence, the need to protect the public, and the defendant's recidivism risk. That explanation was not erroneous, let alone plainly erroneous, and the resulting sentence was reasonable. The other side says it was highly generic, there wasn't any specifics, it was all just generic statements. What's your response to that? Two responses to that, Judge Ikuta. First, I would push back against it being generic. The district court specifically said, for example, that the defendant had not responded well to prior interventions and had recidivated. And that happened in 2008, but that's a direct finding of the court. And in the interim, he was in prison. So recidivism, the public was not at issue, but it should be noted that even in prison, he stabbed a fellow inmate and had multiple violations of prison rules. But the public defender argues that there's evidence that was not looked at by the district court about rehabilitation that had gone on in prison. What's your response to that? The district court did look at that evidence. It simply disagreed with it. It read all of the papers, as it said. It read the defendant's letter and... Can you rely on the paper? I mean, you seem to be relying on the presumption, which we normally grant, but now they argue that you can't rely on that presumption when you're doing an out-of-guidelines range. Did the district court need to do more here because it was an out-of-guidelines range departure? No. The purpose of the sentencing explanation requirement is twofold. First, the parties need to be heard, and the record needs to reflect that. And second, this court needs to have a basis for reviewing the sentence. And this record does provide a basis. Each of the things that the district court mentioned can be tied directly to arguments made by the government, either during the hearing or in the papers, as well as evidence in the supervised release report. The district court does not need to spell out, for example, the specific instances in which the defendant did not respond to intervention. The district court does not need to spell out... Well, I guess that's the question we have to address. I mean, I think you're right if it's within guidelines range. The question is, is there more required? It would seem there would be more required to go for a departure. I'm not sure this meets it, but you seem to be saying, no, the presumption applies. The presumption that he's read the papers, as long as it was in the papers and the district court makes a nod to having read the papers, that's enough to depart. And what cases support that in the departure context? A mere nod is not enough. But specifically going through 3553A factors that could be attached to arguments in the papers is enough. And two cases that the government cited, which were upward departures or variances, were Moussa and Leonard. In both of those cases, those were sentences above the guidelines range. In Moussa, the court found it sufficient that the district court merely said that the defendant was a danger to the community. In Leonard, the court found it sufficient that the district court said that the defendant had not complied in any sense with the terms of supervised release. Those are far briefer explanations than what we have here, which brings me to my next point. Even if this explanation were procedurally erroneous, it is certainly not clearly or obviously procedural error, particularly in light of Moussa and Leonard. The defense relies on McBell. But McBell is fundamentally different in that all the judge said was that his sentence complied with the purposes of sentencing, and then later expressed his own doubts about the sufficiency of his explanation. And that goes to prong three. Even if there were clear error, which there is not, there is nothing offered by the defense to show that the district court would impose a different sentence beyond speculation. And this court has said such speculation is not sufficient to meet prong three. I want to discuss the allegation of clear error as well. The district court did not err by saying that the defendant had repeated violations. The court was using the word repeated in the sense of multiple. And the defendant certainly had multiple violations in 2008. He was found drunk, thereby violating his alcohol condition. He had failed to report for drug testing, thereby violating that drug condition. He had committed an armed robbery. He had failed to report his arrest. He was found with a stolen cell phone when they searched his apartment. His apartment contained stolen property. All of these things were violations. And the purpose of clear error is that this court can reverse only when the error is clear. And when there are multiple meanings to a word like repeated, I would submit that that is not clear. And even if that were an erroneous statement, as the government said in its briefs, a simple misstatement during a sentencing explanation is not sufficient to reverse a sentence when it's otherwise supported by the record. What about the idea that he's precluded, the district court has precluded from looking at the severity of the crimes? And if I remember correctly, the district court said he wasn't, but then mentioned it. How do you juxtapose those? I juxtapose those by looking at Simtob. Simtob outlined the ways you can consider prior offenses. Prior offenses are relevant to protecting the public. They're relevant to deterrence. They're relevant to the general nature and history of the characteristics that go into the permissible sentencing considerations. And that's what the district court was using that offense for in this case. District court, as you said, never said it was sentencing based on the seriousness of the offense. In cases where this court has reversed on that basis, the district court had said it was considering that as a primary or sole reason. As long as the district court considers it through a backdoor analysis, then it's okay. Is that basically what the law is on this? It's not a backdoor analysis. Well, I mean, he says I'm not considering it, but then he is considering it for purposes of other factors. I mean, you seem to be suggesting as much as well, that where you can consider it for purposes of its effect on the public, that makes sense to me. But then I don't understand why we can't just be honest and say, well, he's considering it. He is considering it. He's just not considering it on the basis of it being an actual prior act of violence. He's just saying, well, it would harm the public. Well, as Judge Ikuta mentioned, this is before the Supreme Court right now. They may come out that way. But in the interim, the district court acted within the confines of SIMTAB, which says exactly what you're saying, that you can't sentence primarily or solely on the basis of the seriousness of the offense, but it would not make sense to ignore prior offenses when considering permissible goals like deterring the defendant or protecting the public. And if you said we did not have to wait for a stirrups, do you still take that position or should we wait and see what the Supreme Court says on that issue? Especially because this is a plain error case and this court already aligns with the more defendant friendly view. Plain error, the defense gets the benefit of a Supreme Court decision that comes out during the pendency of the appeal. So even if we rule for you, the defense is going to keep this case open until June and then we're going to have to revisit it. I don't understand why we should move forward until we hear from the Supreme Court. You should move forward because the district court did not consider the seriousness of the offense in this case. We have to take the district court at its word. This court has a presumption that the district court knows the law when it's sentencing. And there's nothing that the district court did here that was not explicitly approved of in SIMTAB. So I don't think this court needs to wait for the Aceris decision. Even if there were error, which there isn't, on the seriousness of the offense prongs. Prongs three and four of plain error cannot be met. The court could rule on that alone. But if this court were somehow inclined to reverse based off procedural reasonableness, then the government would ask the court to wait for the Aceris decision. Fair enough. It's a good argument. Unless the court has any other questions. Apparently not. We ask the court to affirm. Thank you. Thank you. I know I'm low on time, your honors, if I'm going to try to make three quick points, if I may. The first is that the two cases from this court that hold that the district court saying I've considered the papers is insufficient are both Trujillo and McBell itself. As to Trujillo, it also says that this 3553C2 requirement, which I will note it's a statutory requirement as well as a precedential requirement, is a requirement of explanation, not consideration. The court has to explain its sentence, not just consider the arguments. And that includes explaining rejection of non-frivolous defense arguments. And finally, the two cases that my friend just relied on for upward variance cases, Judge Nelson, are Musa and Leonard, both of which predate Cardi. So in terms of them requiring less of an explanation in upward variance case, I submit that they are explicitly overruled by footnote five of Cardi, but by this court sitting on bank. I think that's all I have. Unless the court has further questions, we would ask that you vacate on either procedural error or substantive unreasonableness. Okay, we thank you for your argument. We thank both sides for the argument. And we have a number of cases that were submitted on the briefs. Those are Adolfo Garcia versus Costco Wholesale Corporation is submitted. United States versus Hector Ohm, which is submitted. Ronald Woods versus Michelle King is submitted. And Raul Perez Cruz versus Pamela Bondi is submitted.
judges: IKUTA, NELSON, LEE